UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Charles Blackwell**                                              Hon. Bernard A. Freidman
**Interested Party,** *Pro Se*

**IN RE: Criminal Case USA v. Carnord Gordon (19-20610)**

_____

## MOTION TO UNSEAL DOCUMENTS

**COMES NOW** Interested Party Charles Blackwell, proceeding *Pro Se,* respectfully requests this court to enter an order directing the Clerk of the Court to unseal the sentencing memorandums related to the above captioned matter because sufficient justification has not been proffered necessitating the need for sealing. Movant attempted to comply with Local Rule 7.1 by emailing both Attorneys of Record informing them of the relief sought and the legal basis for such relief. However, Movant did not receive a response back at the time of this filing.

## STANDING AND JURISDICTION

As the Supreme Court has held, all members of the public must be given a right to be heard on the question of their exclusion from court hearings and records, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982), and it is well-settled that non-party members of the public and press have standing to challenge the sealing of court hearings and records. *Daines v. Harrison*, 838 F. Supp. 1406, 1408 (D. Colo. 1993) (newspaper had standing to challenge sealing of settlement agreement); *U.S. v.*

*McVeigh*, 918 F. Supp. 1452, 1456 (W.D. Okla. 1996) ("movants have standing to present these questions on behalf of themselves and the general public"); see also *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988 (public advocacy group had standing to challenge protective order in tobacco litigation).

It also is well-settled that an interested third party may bring its motion to unseal after the underlying proceedings have ended. *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) (third party intervened after judicially approved settlement in order to challenge sealing), *FDIC v. Ernst & Ernst*, 677 F.2d 230, 231-32 (2nd Cir. 1982) (third party intervened to challenge stipulated confidentiality order two years after settlement); *Mokhiber v. Davis*, 537 A.2d 1 100, 1104-06 (D.C. Cir. 1988) (reporter permitted to intervene four years after a judicially-approved consent decree in order to challenge a protective order); *Van Etten v. Bridgestone/Firestone, Inc.*, 117 F. Supp. 2d 1375 (S.D. Ga. 2000) (media intervened and compelled unsealing of records a year after settlement of a products liability case).

Accordingly, Movant has standing to bring this motion requesting that this Court vacate its sealing orders in this case.

## BACKGROUND

Carnord Gordon is a gang member with gang affiliations to a violent Detroit street gang called ("TNO") Trust No One. Mr. Gordon was a subject to a (ATF) investigation regarding the ordering and importation of Glock switches online from China. As a result of this (ATF) investigation and search warrant at a residence on Asbury Street in Detroit, Mr. Gordon and his brother Trevon Bryant were federally

charged. Trevon Bryant was charged in *USA v. Trevon Bryant (19-20452).* Mr. Gordon was charged in the above-captioned matter. Both cases should have been designated as a companion case but were not due to an unknown error.

Mr. Gordon was released on bond by the Court with bond conditions of a GPS tether. However, on December 27th, 2019 the Defendant cut off his tether and went on the run. Eventually, the US Marshals was able to apprehend Mr. Gordon after a manhunt around late January 2020 [1] . During his time period Mr. Gordon also engaged in domestic violence against a female acquaintance. It is also important to point out that Mr. Bryant also was released on pretrial release in his case with the bond conditions of a GPS tether. Mr. Bryant cut off his tether as well and went on the run. Mr. Bryant then went on to shoot someone in the stomach in Detroit while a fugitive and was ultimately arrested by the US Marshals (19-20452 ECF No. 30).

Mr. Gordon pled guilty pursuant to a Rule 11 plea agreement that was entered on March 10th, 2020 (ECF NO. 37). The sentencing guidelines were 41 months to 51 months.  However, the offense level worksheet attached to this Rule 11 plea agreement says it was completed on September 27th, 2019. This was a calculation done *before* Mr. Gordon decided to flee on December 27th, 2019. Mr. Gordon faced additional legal exposure by cutting his tether and fleeing and therefore possibly violated 18 U.S.C § 3146 or 18 U.S.C § 401. He could have been charged with this additional offense which would have carried a consecutive sentence to be imposed onto his underlying offense.

---

[1] https://www.wxyz.com/news/most-wanted/detroits-most-wanted-carnord-gordon-buys-5-illegal-gun-conversion-kits-from-china-cuts-off-tether-and-takes-off

For reasons unknown, the government declined to do so. The Government also failed to update their Rule 11 plea agreement September 27th, 2019 worksheet calculation *after* Mr. Gordon was apprehended to reflect this conduct under the U.S.S.G Manual. He was still given a 3-offense level reduction for "acceptance of responsibility" when many would consider cutting a GPS tether and fleeing an evasion of responsibility. There is a mystery as to why both things happened. The Court and the Government is afforded and can exercise their judicial and prosecutorial discretion to make certain charging decisions and impose sentences they feel are just and proper. However, the public should not be prohibited from the ability to view judicial documents such as sentencing memorandum to analyze the very information and factors the Court and AUSA relied on to consider and exercise such discretions.

    Mr. Gordon was sentenced on June 30th, 2020 but there are no publicly available sentencing memorandums on the docket. It appears that they may be under seal. It is important to point out that in the Trevon Bryant case both of his sentencing memorandums are publicly available, and he was deemed a lower level participant in this offense by Judge Victoria Roberts (*Bryant* ECF No.49). This writer personally watched the sentencing hearing of Mr. Gordon via Zoom on June 30th. Surprisingly, AUSA Meixner neither did the Court make any mention or reference to the defendant cutting his tether and fleeing. It was almost as if this event did not occur or was not significant enough to be discussing. Also, AUSA Meixner stated to the Court that they were recommending the low end of the guidelines of 41 months. Mr. Gordon cut his tether and avoided an additional charge and still got the benefit of the government

recommending the low end of the negotiated plea agreement that appears to possibly not have an accurate worksheet calculation.

Essentially, it appears Mr. Gordon was able to defy the Courts trust and order and flee without any additional adverse consequences and punishment for that conduct. Mr. Bryant cut his tether as well and was sentenced to time served (*Bryant* ECF NO.50*)*. 18 U.S.C § 3553(a)(2)(B) speaks about the need for deterrence to criminal conduct. However, both defendants suffered no additional punishment for their actions while on pretrial release. It also begs the question: How does both sentences deter the next defendant charged in this district from fleeing if there is a possibility that they too might not suffer additional punishment? These are logical and legitimate questions that the public deserves some level of answers to and warrant further scrutiny. Those answers are contained in the sentencing memorandums that the government and the defense counsel has prepared and presumably submitted under seal.

These memorandums would list the full range of 18 U.S.C § 3553(a) factors from both parties and this will inform the public of the information that was presented to the Court to consider when deciding on a sentence to impose for Mr. Gordon. Simply put, without public access to these commonly available judicial documents there is no way for the public to analyze and place accountability onto the Court and AUSA's for their reasoning and decision making. This is an important function in a functional democracy for citizens to be an active participant in politics and civic life and hold those who represent us accountable.

## ARGUMENT

The courts have long recognized, therefore, a "strong presumption in favor of openness" as to court records. *Brown & Williamson*, 710 F.2d at 1179.  Closure motions must be (1) docketed reasonably in advance of their disposition so as to give the public an opportunity to present their objections to the court, (2) the court must provide interested persons an opportunity to object to the sealing before making its decision, and (3) if the court does close a hearing or seal records, it must state its reasons on the record, supported by specific findings. *In re Knight Publishing Co.*, 743 F.2d 231, 234-35 (4th Cir. 1984). The docket sheet in this case show that the mandatory sealing procedures were not followed, as the public was denied an opportunity to object to the motion to seal and the Court failed to determine for itself whether sealing in fact was warranted. On this basis alone, the documents at issue must be unsealed. *In re Washington Post*, 807 F.2d at 393 (vacating district court's sealing order because the court "cannot uphold orders based on the use of impermissible procedures"); *Brooklier*, 685 F.2d at 1167-68 (order closing hearings and sealing records unconstitutional because "the court excluded the public and press without satisfying the procedural prerequisites to closure"). Moreover, a court cannot automatically cure a failure to comply with the procedural requirements by holding a belated hearing or making after-the-fact findings. *In re Washington Post*, 807 F.2d at 392 (a belated hearing on a motion to unseal "does not cure the lack of an opportunity for a hearing with respect to the original decision to seal them").

"[T]he public is entitled to assess for itself the merits of judicial decisions" and, thus, "`[t]he public has an interest in ascertaining what evidence and records the District

Court [has] relied upon in reaching [its] decisions.'" *Id.* (quoting *Brown*, 710 F.2d at 1181). This is the overall point the Movant is making in this present motion. The public deserves access to judicial documents and evidence so that the public itself can analyze the merits of judicial decisions that have been rendered and imposed. The courts have routinely found a right of access to sentencing documents filed in criminal cases because these documents easily meet the Supreme Court's two-part test for recognizing a constitutional right of access: (1) "the document is one which has historically been open to inspection by the press and the public; and, (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *McVeigh*, 119 F.3d at 812 (quoting *Press-Enterprise II*, 478 U.S. at 8). Sentencing memorandums have been historically available to the public except in very limited circumstances and they play a significant function in the role and decision making of the Judiciary. This satisfies the Supreme Court two prong test and the First Amendment right would attach to these documents. The burden of overcoming that presumption is borne by the party that seeks to seal them. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). The burden is a heavy one: "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). The public right of access is both constitutional (*see Richmond Newspapers*, *Inc.* v. *Virginia*, 448 U.S. 555 (1980) and a traditional common law right, (*see Nixon* v. *Warner Communications*, *Inc.*, 435 U.S. 589, 597-98 (1978).

In addition, the Sixth Circuit has recently emphasized the public's "strong interest in obtaining the information contained in the Court record." *Shane Grp., Inc.*, 825

F.3d at 305 (internal quotation marks and citation omitted); *see also* In re Nat'l Prescription Opiate Litig., 927 F.3d 919, 939 (6th Cir. 2019) ("`[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access.'") (quoting *Shane Grp., Inc.*, 825 F.3d at 305). Here, there is a strong public interest in the subject matter of the importation of these deadly Glock switches which the (ATF) and (HSI) are actively trying to stop all over the country. WDIV-Local 4 reporter Karen Drew ran a story on the Trevon Bryant case[2]. Likewise, Mr. Gordon is responsible for personally ordering and importing five of these Glock switches directly here into this District. These switches make an already lethal semi-automatic firearm more deadly by turning it into a fully automatic weapon. The Eastern District of Michigan is already suffering from an enormous level of gang violence in urban cities such as Detroit, Flint, and Pontiac. So, the importation of these devices and the illegal distribution of them into the hands of other criminals makes the public even less safe.

      Accordingly, district courts must consider "each pleading [to be] filed under seal or with redactions and to make a specific determination as to the necessity of nondisclosure in each instance" and must "bear in mind that the party seeking to file under seal must provide a `compelling reason' to do so and demonstrate that the seal is `narrowly tailored to serve that reason.'" *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 940 (quoting *Shane Grp.*, 825 F.3d at 305). If a district court "permits a pleading to be

---

[2] https://www.clickondetroit.com/news/2019/08/14/feds-find-illegal-machine-gun-conversion-kits-in-detroit/

filed under seal or with redactions, it shall be incumbent upon the court to adequately explain `why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary.'" *Id.* (quoting *Shane Grp., Inc.*, 825 F.3d at 306). Presently, there is nothing on the public docket from this Court that adequately explains why the needs for nondisclosure of the sentencing memorandums are compelling. A blind acceptance by the Courts of the government's and defense counsel insistence on the need for secrecy, without notice to others, without argument, and without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse and violation of the citizens First Amendment rights.

In *Brown & Williamson,* the court articulated three reasons for the right of public access. First, "public trials play an important role as outlets for community concern, hostility and emotions. When judicial decisions are known to be just and when the legal system is moving to vindicate societal wrongs, members of the community are less likely to act as self-appointed law enforcers or vigilantes." 710 F.2d at 1178 (internal citations omitted). Second, "public access provides a check on the courts. Judges know that they will continue to be held responsible by the public for their rulings. Without access to the proceedings, the public cannot analyze and critique the reasoning of the court . . . . One of the ways we minimize judicial error and misconduct is through public scrutiny and discussion." *Id.* Third, "open trials promote true and accurate fact finding." *Id.* (internal citation omitted).

When faced with a request to seal, the reviewing court must "balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness." *Rudd Equip.*, 834 F.3d at 594; *see also Shane Grp.*, 825 F.3d at 305. An unopposed motion to file under seal is an insufficient basis to justify sealing court records in a civil case; a court has an independent obligation to determine whether the interests in favor of sealing outweigh the public's right of access to court records. *Rudd Equip.*, 834 F.3d at 595. "[N]either harm to reputation of the producing party or conclusory allegations of injury are sufficient to overcome the presumption in favor of public access." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009). "The proponent of sealing must . . . `analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305-06 (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). "`A naked conclusory statement that disclosure will injure a producing party falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.'"

The parties in this case have failed to provide compelling reasons on the record necessitating a need to seal the sentencing memorandums under the *Shane Group* precedent for the Sixth Circuit as well as the First Amendment. Also, when granting the seal, the Court failed to place an order on the motion to seal on the docket that adequately explains why the interests of non-disclosure are compelling in this case and why the seal itself is no broader than necessary. The sealing of documents in this case

did not comport with the procedural and substantive tests mandated by the Supreme Court and other courts and was unconstitutional.

## CONCLUSION

For the above stated reasons, the Petitioner is respectfully asking this Court to enter an order directing the Clerk of the Court to unseal the sentencing memorandums in the above captioned case.

Respectfully Submitted,

July 5th, 2020

---

Charles Blackwell
/s/Charles Blackwell
2976 Cortland
Detroit, MI, 48206
cblack618@gmail.com
313-451-1043